UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

———————————————————

INTERNATIONAL UNION OF : CASE NO. 1:18-cv-722
OPERATING ENGINEERS, LOCAL 18, :
 :
    Petitioner, : OPINION & ORDER
 : [Resolving Docs. 23, 24]
vs. :
 :
OHIO CONTRACTORS :
ASSOCIATION, :
 :
    Respondent. :

———————————————————

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The International Union of Operating Engineers, Local 18 ("Union") petitions the Court to vacate an arbitration award. After an arbitration, the arbitrator gave an opinion in favor of the Ohio Contractors Association ("Association"). Respondent Association opposes the Union's petition to vacate and moves to confirm the award.

After the parties agreed that this case should be submitted on a joint record[1] and briefs,[2] the Court decides this case.

For the following reasons, the Court **DENIES** the Union's petition to vacate the arbitration award and **GRANTS** Respondent Association's motion to confirm the award.

## I. Background

Petitioner Union represents about 15,000 workers in Ohio and Kentucky who run

---

[1] Doc. 22.
[2] The parties filed their opening briefs on July 16, 2018. *See* Petitioner's Opening Brief, Doc. 23; Respondent's Opening Brief, Doc. 24. The parties filed opposition briefs on August 13, 2018. *See* Petitioner's Opposition to Respondent's Opening Brief, Doc. 26; Respondent's Opposition to Petitioner's Opening Brief, Doc. 25.

Case No. 1:18-cv-722
Gwin, J.

equipment, technology, and machinery used in Ohio's building, construction, and heavy highway industries. Respondent Association represents employers engaged in these Ohio industries.

A collecting bargaining agreement called the Highway Heavy Agreement[3] ("Agreement") establishes the Union's authority and governs its members' working conditions for matters within its jurisdiction.

The present dispute concerns whether equipment known as a "hydro-excavator" falls within the Union's authority. When arbitrating the dispute, the Union argued that the arbitrator should decide a classification and wage rate for hydro-excavators because, under the Agreement, the Union's jurisdiction covered the hydro-excavators. Responding, the Association argued that the Union's jurisdiction did not cover the equipment. On December 26, 2017, Arbitrator Nels Nelson sided with the Association and issued an opinion and award in the Association's favor ("Award").[4]

The Petitioner Union now seeks to vacate the Award under section 301(a) of the Labor Management Relations Act of 1947,[5] section 10(a)(4) of the Federal Arbitration Act,[6] and Ohio Revised Code § 2711.10(D).

Because the parties have jointly submitted the record, the Court does not need to decide contested factual issues for Federal Rule of Civil Procedure 52(a) purposes.

## II. Discussion

When a party seeks to vacate an arbitration award under Labor Management

---

[3] Doc. 22-3.
[4] Doc. 22-2.
[5] 29 U.S.C. § 185(a).
[6] 9 U.S.C. § 10(a)(4).

Case No. 1:18-cv-722
Gwin, J.

Relations Act § 301 and Federal Arbitration Act § 10(a)(4), the Court applies the *Michigan Family Resources, Inc. v. SEIU Local 517M*[7] test.[8] Because Ohio Revised Code § 2711.10(D) can only provide grounds for vacating the Award insofar as its application is compatible with these federal statutes' purposes, the *Michigan Family* test controls the state law inquiry as well.[9]

Petitioner Union seeks to vacate the Award under *Michigan Family*'s third requirement. This inquiry asks whether, in resolving the pertinent legal or factual dispute, the arbitrator was "arguably construing or applying the contract."[10] If an arbitration opinion meets this low standard, the award will be enforceable.

In most cases, an arbitration opinion meets this standard when the arbitrator appears to engage in contract interpretation.[11] An arbitrator sufficiently engages in contract interpretation when he "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point … say[s] anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract."[12]

In rare cases, an arbitration opinion's merits analysis may reveal that the arbitrator was not arguably construing the contract even though the arbitrator may have facially

---

[7] *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746 (6th Cir. 2007) (en banc).
[8] *See id.* at 750, 753–56 (applying the inquiry to a petition to vacate under the LMRA § 301); *Martin Marietta Materials, Inc. v. Bank of Okla.*, 304 F. App'x 360, 361–65 (6th Cir. 2008) (applying the inquiry to a petition to vacate under FAA § 10(a)(4)).
[9] *See Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457 (1957) ("Federal interpretation of the federal law will govern, not state law. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." (citations omitted)).
[10] *Mich. Family*, 475 F.3d at 753. *See also Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 905–06 (6th Cir. 2012) (applying the *Michigan Family* inquiry).
[11] *Mich. Family*, 475 F.3d at 753.
[12] *Id.* at 754.

Case No. 1:18-cv-722
Gwin, J.

appeared to interpret the contract.[13] This occurs when the arbitrator's interpretation is so ignorant of or untethered from the contract that it "make[s] implausible any contention that the arbitrator was construing [it]."[14]

### A. The Arbitrator Arguably Construed Paragraphs 4 and 30 When Resolving the Dispute

Petitioner Union claims that the arbitrator did not construe paragraphs 4 and 30 of the Agreement when resolving the dispute. The Court disagrees.

Under paragraph 30 of the Agreement, either party may request a negotiation for a new classification and rate of pay "[1] *[i]f equipment within the jurisdiction of the International Union of Operating Engineers* is [2] used by an Employer and [3] there is not an appropriate classification listed under the wage schedule [in the Agreement]."[15] Paragraph 4 informs the first requirement. It shows that the Union's jurisdiction extends to (1) all equipment classified within the Agreement and (2) "all like equipment."[16]

The arbitrator's opinion dealt with both paragraphs: he quotes them in full, recites both parties' arguments about them, and then refers to and analyzes them in his merits discussion.[17] Further, nothing suggests that the arbitrator was doing anything but interpreting the Agreement in good faith.

The arbitrator's merits analysis also is not so untethered from the Agreement that it is implausible that the arbitrator was construing it when issuing the opinion.[18]

Petitioner Union argues that the arbitrator incorrectly imposed a requirement that

---

[13] *Id.* at 753.
[14] *Id.* at 753.
[15] Doc. 22-3 at 32 (emphasis added); *see* Doc. 22-2 at 31–32.
[16] *See* Doc. 22-3 at 15–16; Doc.22-2 at 32–36; Doc. 23 at 16.
[17] *See* Doc. 22-2.
[18] *Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union,* 700 F.3d 891, 906 (6th Cir. 2012).

-4-

Case No. 1:18-cv-722
Gwin, J.

the equipment must already be identified in the Agreement for it to be within the Union's jurisdiction, and that this shows that the arbitrator ignored paragraph 30's plain language.[19] The Union also argues that the arbitrator's opinion ignored paragraph 4 and mistakenly relied only on paragraph 29 as the sole basis of the Union's jurisdiction.[20]

When interpreting paragraph 30, the arbitrator did not say that the hydro-excavator must already be identified in the Agreement to be within the Union's jurisdiction.[21] In determining whether the hydro-excavator was "equipment within the jurisdiction of the International Union of Operating Engineers" per paragraph 30, the arbitrator stated:

> The crux of the dispute is whether the hydro-excavator is in the union's jurisdiction. Paragraph 4 lists numerous pieces of equipment but does not include the hydro-excavator. Furthermore, while Paragraph 4 includes "all like equipment" as assigned to the union by the AFL-CIO, the listed equipment does not include anything like the hydro-excavator.[22]

The arbitrator therefore considered the possibility that the equipment could be within the Union's jurisdiction even though it was not explicitly identified in the Agreement.

The arbitrator also did not solely rely on paragraph 29 as the source of the Union's jurisdiction.[23] Paragraph 4 is the very first provision the arbitrator considered when the arbitrator decided whether the hydro-excavator was in the Union's jurisdiction. The arbitrator found that the hydro-excavator was not explicitly classified in the Agreement and—importantly—that it could not be considered "like equipment" per paragraph 4.

The arbitrator only considered paragraph 29 as a potential source of the Union's

---

[19] Doc. 23 at 14–15.
[20] Doc. 23 at 15–17.
[21] Doc. 23 at 14–15.
[22] Doc. 22-2 at 32.
[23] Doc. 23 at 15–17.

Case No. 1:18-cv-722
Gwin, J.

jurisdiction over hydro-excavators after ruling out paragraph 4 as a potential jurisdictional basis.[24] Paragraph 29 states that the Agreement's purpose is to establish wage rates and conditions for all work defined in the Agreement and for the operation of equipment under the jurisdiction of the Union, the branches of the International Union of Operating Engineers, and as negotiated by and between these parties and the Association.[25] This paragraph did not support the Union's argument that the Union's jurisdiction covered the hydro-excavator either.

### B. The Arbitrator's Consideration of Extrinsic Evidence Does Not Make It Implausible that He Construed the Agreement

Next, Petitioner Union argues that the arbitrator solely relied on extrinsic evidence when issuing the Award, instead of applying paragraphs 4 and 30. Specifically, the Union claims that the arbitrator impermissibly considered the parties' bargaining history, their past practices, and language from an earlier district court decision in this matter.

An arbitrator may look for guidance from many sources in issuing an opinion and award, so long as the arbitrator still arguably construes the collective bargaining agreement.[26] Moreover, well-settled rules of contract interpretation allow an arbitrator to consider extrinsic evidence to resolve contract ambiguities.[27]

The Court finds that the arbitrator's consideration of extrinsic evidence is not

---

[24] *See* Doc. 22-2 at 32. Immediately after the above quote, the arbitrator continued, "Since the record indicates that hydro-excavators are used by members of the association and that there is no classification for them in the contract, the dispute is whether the hydro-excavator is within the union's jurisdiction. Paragraph 29 sets out the jurisdiction of the union...." *Id.*

[25] Doc. 22-3 at 31–32.

[26] *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

[27] *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) ("[W]here a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent."); *Local 783, Allied Indus. Workers of Am. v. Gen. Elec. Co.*, 471 F.2d 751, 757 (6th Cir.1973) ("After a finding of ambiguity has been made, '[e]vidence of the surrounding circumstances and the practical construction of the parties is admissible to aid in its interpretation.'" (citation omitted)).

sufficient to vacate the Award.  The arbitrator found the Agreement to be ambiguous before he used the extrinsic evidence.  Although the arbitrator could have been clearer, he stated that "[t]he parties offer[ed] different interpretations of Paragraph 29" and that "the intent of Paragraph 29 [was] unclear" before he proceeded to consider the extrinsic evidence.[28]

Moreover, the arbitrator used the extrinsic evidence to interpret the meaning of the Agreement's provisions.[29]  The parties' bargaining history suggested that under paragraph 29 the Association must first agree to the Union's jurisdiction over a piece of equipment.  The parties' past practice and the district court's earlier decision[30] further supported an interpretation of Paragraph 29 that the hydro-excavator was not within the Union's jurisdiction.  The arbitrator did not substitute the extrinsic evidence for the CBA when issuing the Award.

### III. Conclusion

For the reasons stated, the Court **DENIES** Petitioner Union's petition to vacate the Award and **GRANTS** Respondent Association's motion to confirm the Award.

IT IS SO ORDERED.

Dated:  November 30, 2018                         *s/     James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE

---

[28] Doc. 22-2 at 33–34.

[29] *See* Doc. 22-2 at 34–37.

[30] *See International Union of Operating Engineers, Local 18 vs. Ohio Contractors Ass'n*, No. 1:14 CV 1672 (N.D. Oh. Dec. 19, 2014). This decision addressed the Union's motion to compel arbitration and granted the Association's motion to dismiss for failure to state a claim.

On appeal, the Sixth Circuit reversed.  *See Local 18 Int'l Union of Operating Engineers v. Ohio Contractors Ass'n*, 644 F. App'x 388 (6th Cir. 2016).  It held that the Union stated a breach of contract claim and that the dispute as to whether the Agreement applied to certain equipment was arbitrable. The Sixth Circuit found that the district court had improperly relied on facts beyond the Union's complaint in rendering its decision.

In issuing the Award, the arbitrator relied in part on the district court's analysis because, unlike in the district court proceeding, the evidence that the district court considered was properly before the arbitrator and could properly be considered by him to inform the meaning of the Agreement. *See* Doc. 22-2 at 35–37.